3:20-mj-00172

| | |
|---|---|
| STATE OF OREGON ) | |
| ) ss: | AFFIDAVIT OF KYLE COZART |
| County of Multnomah ) | |

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Kyle Cozart, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.  I am a Criminal Investigator Deputy United States Marshal (CIDUSM) with the United States Marshals Service and have been since August of 2017. I am assigned to the District of Oregon where I am responsible for conducting fugitive and sex offender investigations that result in arrest and prosecutions of individuals who are facing criminal charges in state and federal court. As a Criminal Investigator Deputy U.S. Marshal, I am authorized under 28 U.S.C. § 564 to enforce the federal criminal laws of the United States. My training and experience includes completion of the Federal Criminal Investigator Training Program and the U.S. Marshals Service Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. I have also attended additional training provided by other law enforcement entities relating to fugitive investigations and sex offender investigations.

2.  I submit this affidavit in support of a criminal complaint and arrest warrant for Travis WILLIAMS. As set forth below, I have probable cause to believe that Travis WILLIAMS committed an assault upon a federal officer, in violation of 18 U.S. Code § 111.

3.  The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, my review of

Page 1 – Affidavit of Kyle Cozart

records related to this investigation, communication with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

## Applicable Law

4.  18 U.S.C. § 111 makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties. Under § 111(a), simple assault is a misdemeanor; an assault involving physical contact with the victim or an intent to commit another felony is a felony. Persons designated in § 1114 include any officer or employee of the United States or of any agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties, and any person assisting such an officer or employee in the performance of official duties.

## Statement of Probable Cause

5.  Since on or about May 26, 2020, protesters have gathered in Portland public areas, including Lownsdale Square, Chapman Square, and Terry Schrunk Plaza. The Justice Center, which contains Portland Police Bureau's (PPB) Central Precinct and the Multnomah County Detention Center (MCDC), and the Mark O.Hatfield United States Federal Courthouse, are directly across the street from those parks. The United States of America owns the entire city block (Block #24) occupied by the Hatfield Courthouse, as depicted below. [1]

---

[1] As part of my duties, I am familiar with the property boundaries for federal facilities in the

Page 2 – Affidavit of Kyle Cozart



6.      Daily protests have regularly been followed by nightly criminal activity in the form of vandalism, destruction of property, looting, arson, and assault. The Hatfield Courthouse has experienced significant damage to the façade and building fixtures during the six weeks following this incident. Additionally, mounted building security cameras and access control devices have been vandalized or stolen. The most recent repair estimate for the damage at the Hatfield Courthouse exceeds $50,000, and there has been additional extensive damage since then. Other federal properties in the area routinely being vandalized include the historic Pioneer Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building. FPS law enforcement officers, Deputy U.S. Marshals, and other federal law enforcement officers working to protect the Hatfield Courthouse have been subjected to threats,

---

Portland area. The federal government owns the entire city block occupied by the Mark O. Hatfield Federal Courthouse. Easements have been granted for the sidewalks surrounding the facility. The property boundary extends past the sidewalks and into the streets surrounding the courthouse.

**Page 3 – Affidavit of Kyle Cozart**

aerial fireworks (including mortars), high intensity lasers targeting officers' eyes, thrown rocks, bottles, and balloons filled with paint, and vulgar language from demonstrators while performing their duties.

7.      Specifically, on July 27, 2020, federal law enforcement officers attempted to disperse a crowd on 3rd Avenue between Main and Salmon streets in Portland, OR after the Federal Protective Service (FPS) declared an unlawful assembly multiple times. This occurred after violent opportunists attempted to destroy the security fence in front of the Mark Hatfield Federal Courthouse with power tools. Additionally, violent opportunists attacked law enforcement officers by throwing hard objects, throwing explosive devices, and physically attacking them.  During the dispersal Deputy United States Marshal (DUSM) Victim 1 was dressed in a clearly marked police tactical uniform and was wearing protective equipment to include a gas mask, helmet, and body armor.

8.      At approximately 01:30 hours, DUSM Victim 1 was lined up with fellow officers along 3rd Avenue. Officers began giving the crowd lawful commands to disperse from the area. An individual, later identified as Travis WILLIAMS, was yelling "Take your mask off! Let's go." Law enforcement officers began moving in a line west towards the crowd into Lownsdale Park to disperse. As deputies moved forward, WILLIAMS lunged forward with both hands towards the neck and face area of DUSM Victim 2. DUSM Victim 1 attempted to restrain WILLIAMS and place him under arrest. WILLIAMS immediately began violently resisting and pulled DUSM Victims 1 and 2 over a park bench. WILLIAMS was able to rip communication sets off both officers' vests and ripped part of DUSM Victim 1's ballistic vest partially off his body. DUSM's 1 and 2 were giving lawful commands to stop resisting arrest, but WILLIAMS

refused to comply. DUSM Victim 1 removed his taser and utilized it on WILLIAMS. The Taser had no effect and WILLIAMS continued to fight deputies. WILLIAMS continued to stop deputies from placing restraints on him. DUSM Victims 1 and 2 were unable to place restraints on WILLIAMS hands. A third officer from the Federal Protective Service (FPS) assisted DUSM victims 1 and 2 in restraining WILLIAMS. WILLIAMS was finally placed in handcuffs by DUSM victim 1 with the assistance of DUSM victim 2 and the FPS officer.

9. As the victims walked WILLIAMS away, he suddenly stopped walking and went limp. WILLIAMS began to scream that deputies would need to carry him if they were going to arrest him. DUSM Victim 1 was able to radio for a transport vehicle to move WILLIAMS to the courthouse. When the transport arrived, WILLIAMS went into the vehicle. However, he refused to place his legs inside the vehicle and continued to violently resist. The FPS transporting officer was forced to go to the other side of the vehicle and pull WILLIAMS into the vehicle as DUSM Victims 1 and 2 pushed from the other side. The FPS officer transported WILLIAMS approximately 1 block to the Hatfield courthouse.

10. When WILLIAMS arrived at the courthouse, he was still actively resisting officers. Deputies removed him from the vehicle and moved him to a wall. WILLIAMS continuously attempted to turn around to confront deputies and made repeated attempts to whip deputies with his hair. He continued to actively resist and required 2 deputies to move him to an elevator. While deputies were moving him to an elevator, WILLIAMS squeezed his elbow into the deputy's arm and placed all his body weight on it. The deputy began to yell "he's trying to break my arm!" Responding deputies told WILLIAMS to release the arm. The deputy was able

to remove his arm with the help of responding deputies. Once placed in a cell, WILLIAMS stated to deputies "I almost ripped your buddy's arm off. I'm a state wrestler."

## Conclusion

11.     Based on the foregoing, I have probable cause to believe, and I do believe, that WILLIAMS assaulted a federal employee or officer, in violation of Title 18 U.S.C § 111. I therefore request that the Court issue a criminal complaint and arrest warrant charging WILLIAMS with that offense.

12.     Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Natalie Wight. AUSA Wight advised me that in her opinion, the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

_(By telephone)_
Kyle Cozart
Deputy U.S. Marshal
United States Marshals Service

Sworn to by telephone or other reliable means at in accordance with Fed. R. Crim. P. 4.1 at __12:10__ am/pm on July __27__, 2020.

_/s/ Jolie A. Russo_
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge